```
             UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF LOUISIANA

LEAH ARNOLD VITA, ET AL                    CIVIL ACTION

VERSUS                                     NO: 13-6208

ROOMS TO GO LOUISIANA CORP.,               SECTION: J(5)
ET AL
```

### ORDER AND REASONS

Before the Court is a *Motion for Partial Summary Judgment* **(Rec. Doc. 57)** filed by Defendant, Rooms to Go Louisiana Corp. ("RTG"), as well as an *Opposition* **(Rec. Doc. 68)** by Plaintiffs, Leah Arnold Vita and Giovanni Vita ("Plaintiffs"), and RTG's *Reply* (**Rec. Doc. 92**). Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the motion should be **DENIED**.

### PROCEDURAL AND FACTUAL BACKGROUND

On or about August 2, 2008, Plaintiffs purchased a 42" x 72" glass top dining table ("the glass table") from a Rooms to Go store located in Metairie, Louisiana. The glass table was delivered to and accepted by Plaintiffs on August 14, 2008. Plaintiffs allege that Rooms to Go advertised and labeled the glass table as being made with "safety glass" that was "shatterproof." On October 26, 2012, while the Plaintiffs were in the process of moving furniture into a new home, the glass table broke into a "few large shards of

1

glass."(Rec. Doc. 1, p. 3). One of the pieces of glass cut Plaintiff Leah Arnold Vita in the leg, "damaging her tendon, and slicing her artery." (Rec. Doc. 1, p. 3). On October 21, 2013, Plaintiffs filed the present lawsuit against RTG in this Court based on diversity jurisdiction.

In their complaint, Plaintiffs set forth several causes of action. Plaintiffs claim that RTG should be held liable for damages as a result of its negligent misrepresentation of the table by describing it as "shatter proof" and being composed of "safety glass." Plaintiffs also claim that RTG breached its warranty against redhibition by selling allegedly defective "shatter proof" glass. Additionally, Plaintiff argues that RTG violated the Louisiana Products Liability Act ("LPLA"), set forth in La. R.S. § 9:2800.57, under several theories. These theories include the following: (1) the glass table contained a construction or composition defect; (2) the glass table contained a design defect; (3) RTG provided an inadequate warning regarding the danger posed by the glass; and (4) RTG breached an express warranty by misrepresenting the glass as "shatter proof." For each of these claims, Plaintiffs seek damages including medical expenses, pain and suffering, mental anguish, physical disfigurement and impairment, and loss of earnings.

RTG initially filed a motion for partial summary judgment seeking dismissal of Plaintiffs' claims under the LPLA and a

limitation of damages on Plaintiffs' redhibition claim on July 31, 2014. In light of the fact that Plaintiff had not yet had a chance to conduct a Rule 30(b)(6) deposition of an RTG corporate executive, the Court found that the motion was premature. The Court denied the motion without prejudice, noting that RTG could re-file the motion after the aforementioned deposition was conducted and further information regarding RTG's relationship with the foreign manufacturer of the table was revealed.

The 30(b)(6) deposition was conducted on or about September 23, 2014. The parties then attended a pre-trial conference on November 13, 2014, and the jury trial in this matter is currently set for December 8, 2014. RTG filed the instant motion, alleging arguments nearly identical to those contained in its previous motion for partial summary judgment. Specifically, RTG requests that the Court dismiss Plaintiffs' claims brought pursuant to the LPLA as well as Plaintiffs' redhibitory action.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists,

the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted).  The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden

then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

### A. Louisiana Product Liability Act

The LPLA "provides the *exclusive* remedy for persons claiming injury due to product defects." *Willis v. Noble Drilling, Inc.*, 11-598 (La. App. 5 Cir. 11/13/12); 105 So.3d 828, 842, n. 35 (citing *Scott v. Am. Tobacco Co., Inc.*, 04-2095 (La. App. 4 Cir. 2/7/07); 949 So.2d 1266, 1273) (emphasis added). Additionally, the plaintiff may only recover from a defendant who qualifies as a manufacturer of the product under the LPLA. LA. REV. STAT. ANN. § 9: 2800.52 (1988).

The primary issue in dispute between the parties regarding Plaintiffs' LPLA claims is whether RTG qualifies as a "manufacturer" pursuant to the language of the LPLA. The LPLA defines "manufacturer" in several ways:

> [A] person or entity who is in the business of manufacturing a product for placement into trade or commerce," which includes "producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. . . .
> 'Manufacturer' also means:
> (a) A person or entity who labels a product as his own

>or who otherwise holds himself out to be the
>manufacturer of the product.
>(b) A seller of a product who exercises control over
>or influences a characteristic of the design,
>construction or quality of the product that causes
>damage.
>(c) A manufacturer of a product who incorporates into
>the product a component or part manufactured by
>another manufacturer.
>(d) A seller of a product of an alien manufacturer if
>the seller is in the business of importing or
>distributing the product for resale and the seller is
>the alter ego of the alien manufacturer. . . .

LA. REV. STAT. ANN. § 9: 2800.53 (1988). RTG argues that no genuine issue exists regarding the fact that it does not qualify as a manufacturer under the LPLA. First, RTG maintains that it was not the actual manufacturer of the glass table base or the table top. Instead, RTG submits that the table base was manufactured by Home Designs, Import, Inc. in Xiamen, China, and that the glass top was manufactured by Asiafame Development Limited ("Asiafame") in Guang Dong, China. (Rec. Doc. 57-1, p. 7). Plaintiffs, in response, contend that even if RTG may not have been the actual manufacturer of the glass table top, it qualifies as a manufacturer pursuant to the LPLA as RTG labeled the glass table as its own and held itself out to be the manufacturer of the table. Specifically, Plaintiffs note that all labels on the table reflected that RTG was the manufacturer of the product and contained no information regarding Asiafame, or any other type of foreign manufacturer.[1]

---

[1] Plaintiffs also briefly note in their Opposition that RTG acts as an "alter-ego of a foreign manufacturer" and thus qualifies as a manufacturer under the LPLA. However, Plaintiffs have provided the Court with no legal or factual support for this argument.

6

Louisiana Courts have repeatedly recognized the "apparent manufacturer doctrine" in which sellers hold themselves out as the actual manufacturers of the products which they sell, and these courts have "held apparent manufacturers liable in the same capacity as manufacturers since 1967." *Chevron USA, Inc. v. Aker Maritime, Inc.*, 604 F.3d 888, 895 (5th Cir. 2010) (citing *Penn v. Inferno Mfg. Corp.*, 199 So.3d 210, 214-15 (La. App. 1 Cir. 1967)). This liability is based on the premise that "when [a] vendor puts only its name upon the product without indicating that it is actually the product of another[,] then the public is induced by its reasonable belief that it is the product of the vendor to rely upon the skill of the vendor and not the skill of any other." *Chevron*, 604 F.3d at 896 (citing *Penn*, 199 So.3d at 215; *Carney v. Sears, Roebuck and Co.*, 309 F.2d 300, 304 (4th Cir. 1962)). Generally, it takes "very little" for a seller to be found liable as an apparent manufacturer of a product when the product does not bear the mark or signature of the actual manufacturer. *Chevron*, 604 F.3d at 896. In fact, "Holding out a product in any significant manner as one's own is likely to earn one the label 'manufacturer.'" *Chastant v. SBS-Harolyn Park Venture*, 510 So.2d 1341, 1344 (La. App. 3 Cir. 1987). A failure to provide buyers with adequate notice of the existence of a third-party manufacturer is sufficient to render a seller an apparent manufacturer. *Coulon v. Wal-Mart Stores, Inc.*, 98-1141 (La. App. 1 Cir. 5/14/99); 734 So.2d

916, 919-20 (holding Wal-Mart liable as an apparent manufacturer of a defective bicycle when it failed to provide any notice to buyers that the bicycle was assembled by a separate entity).

Here, the facts indicate that RTG labeled the glass table, both the top and the base, as being manufactured by RTG. As noted by Plaintiffs, all labels affixed to the table and nearly all of the documents associated with the table contained only RTG's name and made no reference to any other manufacturer. The only evidence RTG relies on in support of its contention that it made buyers known of the existence of the Chinese manufacturer is a document contained in the table's packaging which included a notice reading "This Glass Top is Made in China," and referencing Asiafame's disclaimers of liability.[2] A Louisiana Court has previously recognized that a label directly affixed to a product indicating that the product was made in China but making no reference to a third-party manufacturer was sufficient to identify the seller as an apparent manufacturer for purposes of the LPLA. *Allstate Ins. Co. v. Fred's, Inc*., 44-508 (La. App. 2 Cir. 3/17/10); 33 So.3d 976, 984. While the present circumstances can be distinguished from those in *AllState*, due to the fact that this notice specifically references Asiafame as the third-party manufacturer, a Louisiana

---

[2] This document is currently the subject of a pending Motion to Strike filed by Plaintiffs. However, because this document in and of itself is not sufficient to release RTG from a classification as an "apparent manufacturer," consideration of whether this exhibit should be struck from the record is not required at this time.

court has previously recognized that even when a seller provides the name of a third-party manufacturer on labels or documentation included with the product, this may not be sufficient to relieve them from liability as an apparent manufacturer. *Peterson v. G.H. Bass and Co., Inc.*, 97-2843 (La. App. 4 Cir. 5/20/98); 713 So.2d 806, 808 (holding that the trial court did not err in classifying the defendant seller as a "manufacturer" of defective shoe care products "even though the products' labels clearly state in fine print on the back of the cans that these products were 'Manufactured for [Defendant].'"). Here, the only potential notice provided to Plaintiffs regarding the fact that RTG was not the actual manufacturer of the table was a notice stating that the product was made in China and referencing Asiafame's disclaimer of liability, but never specifically stating that Asiafame is the manufacturer of the product. Additionally, the parties dispute whether this one page document was ever delivered to Plaintiffs.[3]

The Court also finds the cases relied on by RTG in support of its contention that it did not hold itself out as a manufacturer to be distinguishable from the facts at hand. RTG first cites the decision in *In re FEMA Trailer Formaledhyde Products Liability*

---

[3] Plaintiffs have testified in an affidavit provided to the Court that the RTG delivery men delivered and set up the table at Plaintiffs' residence, yet after completing the set up, removed all packaging material and boxes associated with the table. (Rec. Doc. 68-6, p. 2). This affidavit further reflects that the Plaintiffs were not provided with any documentation at the time of delivery other than a delivery invoice, which contained no mention of Asiafame or the location of the table's manufacture. (Rec. Doc. 68-6).

9

*Litigation*, in which this Court found the defendant Fluor Enterprises, Inc. ("Fluor"), the government contractor who installed and delivered the plaintiff's allegedly defective FEMA trailer, did not qualify as a manufacturer under the LPLA. MDL No. 07-1873, 2009 WL 2969503, at *3 (E.D. La. Sept. 11, 2009) (Engelhardt, J.). However, this opinion addresses only the plaintiff's allegations that Fluor qualified as a manufacturer by "significantly modif[ying] and materially alter[ing] Plaintiff's [trailer]." Nowhere in its opinion does the Court address any allegation that Fluor held itself out as a manufacturer, as is the crux of Plaintiff's claim in the present matter. RTG also relies on the ruling in *Shapiro v. Wal-Mart* in which this Court held that Target was not a manufacturer under the LPLA of a defective hair dryer which had been manufactured by a third party. No. 93-3245, 1994 WL 577346, at *1-2 (E.D. La. Oct. 17, 1994) (Sear, J.). However, unlike the present circumstances, the hair dryer contained only a label stating it was "Distributed by Target Stores." *Id.* at *1. This was the only label affixed to the hair dryer indicating Target's association with the product, and "no representation was made regarding the manufacture of the hair dryer." *Id*. Here, the glass table top contained no labels saying that the top was merely "distributed by," rather than manufactured by, RTG. Additionally, it contained no labels or packaging information, other than the aforementioned notice, indicating the top was manufactured by any

10

party other than RTG. As such, the Court finds these two cases unpersuasive.

Because the vast majority, if not all, of the labels and documentation provided to Plaintiffs regarding the glass table make no reference to a third party manufacturer, the Court finds that RTG held itself out "in a significant manner" as the manufacturer of the table and may be found liable pursuant to the LPLA as an apparent manufacturer. *See Chastant*, 510 So.2d at 1344. Additionally, because RTG qualifies as a manufacturer under the LPLA by holding itself out as the manufacturer of the table, it is unnecessary for the Court to determine whether RTG acted as an "alter-ego of a foreign manufacturer" or whether it may be found liable as a seller under the LPLA.

**B. Redhibition**

RTG also raises two challenges at the summary judgment stage against Plaintiffs' claim for RTG's alleged breach of the warranty against redhibition. Both of these challenges rest on RTG's contention that it qualifies as a "good faith seller" pursuant to Louisiana law governing redhibition. First, RTG argues that Plaintiffs' claim has prescribed, as they failed to file the claim within four (4) years of the delivery of the table. Second, RTG maintains that as a good faith seller, it may only be found liable to return to Plaintiffs the purchase price of the table as well as any immediate expenses incurred by the purchase of the table,

exclusive of damages. RTG argues that the Court should find that any redhibition claim for damages made by Plaintiffs should be dismissed. Plaintiffs, in response, assert that because RTG qualifies as a manufacturer under the LPLA by holding itself out as the manufacturer of the table, knowledge of the table's defect is imputed to RTG, precluding its classification as a good faith seller. Plaintiffs further assert that because the prescriptive period for bad faith sellers may extend beyond four (4) years, the claim has not yet prescribed.

In order to determine whether either of RTG's challenges hold merit, it is first necessary to determine whether RTG in fact qualifies as a "good faith seller" for purposes of redhibition. A seller of a defective product is considered to be in "good faith" if he has no knowledge of the alleged defect at the time of the sale. LA. CIV. CODE ANN. art. 2531(1993); *See Palmer v. Benson Toyota Co., Inc*. 641 So.2d 547, 551 (5th Cir. 1994). In contrast, a seller is deemed to be in "bad faith" when he knows a product contains a defect but fails to declare it prior to the sale or if he declares the product has a quality he knows it does not have. LA. CIV. CODE ANN. art. 2531 (1993); *Washed Up on the Beach v. American Marine Holdings*, 746 F.Supp.2d 803, 807 (E.D. La. 2010) (Lemelle, J.). Additionally, regardless of whether it has actual knowledge, "a manufacturer is deemed to be in bad faith in selling a defective product." *Washed Up*, 746 F.Supp.2d at 807 (citing *Alexander v.*

*Burroughs Corp.*, 359 So.2d 607, 609 (La. 1978)).

RTG maintains that because it had no actual knowledge of any defects in the glass table, nor a duty to inspect the table for defects prior to sale, that it qualifies as a good faith seller. Plaintiffs, however, submit that because RTG should be found to be a manufacturer for purposes of the LPLA, it should also be treated as one for purposes of redhibition, and should thus be classified as a bad faith seller. As noted above, the Court agrees that RTG qualifies as an "apparent manufacturer" pursuant to the LPLA by failing to give sufficient notice to buyers that the table was manufactured by a third party. Louisiana courts have previously recognized that "apparent manufacturers may be held liable in redhibition, when a manufacturer's imputed knowledge of defects is assessed against them." *Chastant*, 510 So.2d at 1344. As such, the Court finds that RTG must be classified as a seller in bad faith, with imputed knowledge of the table's defects.

The law is generally settled within Louisiana that the prescriptive period for redhibition actions against good faith sellers is the earlier of four (4) years from the day of delivery of the defective product to the buyer or one (1) year from the day the defect was discovered by the buyer. LA. CIV. CODE ANN. art. 2534(A)(1) (1993); *Pratt v. Himel Marine, Inc.*, 2001-1832 (La. App. 1 Cir. 6/21/02); 823 So.2d 394, 400 (citing *DM & M v. Modern Auto Wreckers, Inc.*, 98-2514 (La. App. 4 Cir. 3/31/99); 731 So.2d 1007,

13

1009). However, the prescriptive period for claims against bad faith sellers is considerably longer and allows claims for redhibition to be brought against sellers at any time, so long as this is within one (1) year from the day the defect was discovered by the buyer. La. Civ. Code Ann. art. 2534(B) (1993). Despite Plaintiffs' complaint, which erroneously states that the purchase and the delivery of the glass table occurred sometime in 2009, the delivery of the table to Plaintiffs' residence occurred on August 14, 2008. (Rec. Doc. 57-4). Additionally, Plaintiffs allege that Ms. Vita incurred injury from the shattering of the table top on October 26, 2012. Plaintiffs filed the present lawsuit on October 21, 2013. Because RTG is considered a bad faith seller, this outward period of prescription does not apply. Instead, because Plaintiffs filed their lawsuit within one year from the date the defect was discovered, which is the day that the table allegedly broke and injured Ms. Vita, prescription had not run at the time the lawsuit was filed.

In support of its argument that Plaintiff's redhibition claim has prescribed, RTG also relies on the fact that the table top included a written warranty contained in RTG's Terms and Conditions of Sale, which states, "We warrant that the merchandise you purchase from us will be free from defects in material and workmanship for a period of ONE YEAR from the date of delivery." (Rec. Doc. 92-1, p. 9). RTG argues that because more than one year

14

has passed from the time Plaintiffs purchased the table top, this warranty has lapsed, causing Plaintiff's redhibition claim to prescribe. However, this argument is in direct conflict with Louisiana precedent. Louisiana courts have specifically recognized that "a warranty period is different from a prescriptive period." *Marseilles Homeowners Condo. Ass'n, Inc. v. Broadmoor, LLC*, 12-1233 (La. App. 4 Cir. 2/27/13); 111 So.3d 1099, 1106. Further, "damages caused by a breach of the warranty in a contract of sale are regarded as founded in redhibition and subject to the prescriptive period applicable to redhibitory actions." *Ford Motor Credit Co. v. Bower*, 589 So.3d 571, 573 (La. App. 1 Cir. 1991). Thus, regardless of the warranty period established by RTG's Terms and Conditions, the prescriptive period for Plaintiff's redhibition claim remains one year from the date the defect was discovered, and any attempt to limit this period has no effect. *See* LA. CIV. CODE ANN. art. 3471 (1983) ("A juridical act purporting to exclude prescription, to specify a longer period than that established by law, or to make the requirements more onerous, is null."). Despite this warranty, because Plaintiffs filed the present lawsuit within one year the defect was discovered, their redhibition claim has not prescribed.

Additionally, because the Court finds that RTG does not qualify as a good faith seller, consideration of the extent of potential damages for Plaintiffs' redhibition claim, as discussed by RTG in its motion, is unnecessary at this stage of the

15

litigation.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the *Motion for Partial Summary Judgment* **(Rec. Doc. 57)** is **DENIED**.

New Orleans, Louisiana this 3rd day of December, 2014.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE